IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



FILED
FEB 16 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES OF AMERICA

v.  Criminal No. **3:11CR64**

**TROY DOUGLAS BAYLOR,**

    Petitioner.

**MEMORANDUM OPINION**

Troy Douglas Baylor, a federal inmate proceeding *pro se*, brings this motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 130).[1] Baylor contends that, in conjunction with his conviction and sentencing, his trial and appellate counsel were ineffective,[2] the Court committed several errors, and the Government engaged in misconduct. Specifically, Baylor demands relief because:

    Claim One:    "Violation of 6th Amendment right under *Alleyne* [*v. United States*, 133 S. Ct. 2151 (2013)] when Court at sentencing determined which conviction was second or subsequent." (§ 2255 Mot. 4.)

    Claim Two:    "Court lacked jurisdiction over robbery, where . . . effect on interstate commerce was not properly established." (*Id.* at 5.)

    Claim Three:    "Outrageous government conduct/manufacturing evidence." (*Id.* at 7.)

    Claim Four:    "Cumulative error doctrine." (*Id.* at 8.)

    Claim Five:    "Violation of constitutional right of equal protection under law as prosecutor was aware of the disproportion of stacking § 924(c) on African Americans." (Mem. Supp. § 2255 Mot. 11, ECF No. 131.)

    Claim Six:    "Ineffective assistance of counsel." (*Id.* at 13.)

---

[1] The Court employs the pagination assigned to Baylor's submissions by the CM/ECF docketing system. The Court corrects the spelling, punctuation, capitalization, and spacing in quotations from Baylor's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

> Claim Seven: "Petitioner asserts he is actually innocent of all his counts of conviction." (*Id.* at 14.)

The Government has responded, asserting that Baylor's claims lack merit. (ECF No. 145–1.) Baylor has filed a Reply. (ECF No. 150.) For the following reasons, Baylor's § 2255 Motion (ECF No. 130) will be DENIED.

## I. PROCEDURAL HISTORY

On March 1, 2011, a grand jury charged Baylor with: conspiracy to interfere with commerce by threats and violence (Count One); interference with commerce by threats and violence (Counts Two, Five, Eight, and Eleven); use and carry of a firearm in furtherance of a crime of violence (Counts Three, Six, Nine, and Twelve); and possession of a firearm by a felon (Counts Four, Seven, Ten, and Thirteen). (Indictment 1–8, ECF No. 1.) On January 30, 2012, the Government filed a motion to dismiss Counts Five through Ten. (ECF No. 79.) The Court granted the Government's motion by Order entered on February 1, 2012. (ECF No. 81.) Following a jury trial, Baylor was convicted of all remaining counts. (ECF No. 88, at 1–3.) On April 24, 2012, the Court entered judgment against Baylor and sentenced him to a total of 624 months of imprisonment. (Am. J. 3, ECF No. 125.)

Baylor, through counsel, filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit. (ECF No. 108.) On appeal, Baylor argued that "the district court abused its discretion by rejecting [his] proposed voir dire questions regarding eyewitness identification; excluding the testimony of [his] eyewitness identification expert; refusing [his] proposed jury instructions regarding eyewitness identification; and admitting certain testimony offered by the Government's DNA expert." *United States v. Baylor*, 537 F. App'x 149, 151 (4th Cir. 2013). Baylor also argued that "the Government presented insufficient evidence to support a finding

that the object used or carried during one of the robberies met the statutory definition of a 'firearm.'" *Id.* Alternatively, Baylor contended that the seven-year sentence imposed for one violation of 18 U.S.C. § 924(c) was "constitutionally infirm." *Id.* The Fourth Circuit affirmed this Court's judgment. *Id.* at 165. On December 2, 2013, the United States Supreme Court denied Baylor's petition for a writ of certiorari. *Baylor v. United States*, 134 S. Ct. 717 (2013).

## II. *ALLEYNE* CLAIM

In Claim One, Baylor alleges that "[t]he Court violated [his] Sixth Amendment right under *Alleyne* [*v. United States*, 133 S. Ct. 2151 (2013)] when the Court, at sentencing, determined which of [his] convictions [under 18 U.S.C. § 924(c)] was second or subsequent." (Mem. Supp. § 2255 Mot. 2.) According to Baylor, "this Court improperly determined that the offense where the brandishing occurred was the 'first conviction' returned by the jury, leaving the offense where there was no sighting of a firearm as the second and subsequent conviction." (*Id.* at 4.) Baylor argues that "*Alleyne* makes clear that taking such findings away from the jury is a violation of [his] Sixth Amendment right of the jury determining all elements of [his] offense of conviction." (*Id.*)

Baylor was charged with and convicted of two separate violations of 18 U.S.C. § 924(c)(1)(A)(ii), for brandishing a firearm in relation to a crime of violence. (Am. J. 1.) Under 18 U.S.C. § 924(c), a defendant who brandishes a firearm during a crime of violence is subject to a consecutive mandatory minimum sentence of not less than seven years. 18 U.S.C. § 924(c)(1)(A)(ii).[3] However, because Baylor was convicted of a second or subsequent § 924(c)

---

[3] Baylor believes that he was subject to a five-year mandatory minimum sentence for the § 924(c) count for Wilson's Auto. (*See* Mem. Supp. § 2255 Mot. 4.) Baylor is incorrect as he was charged with and convicted of brandishing a firearm during that robbery. Because a firearm was brandished during the Wilson's Auto robbery, Baylor was subject to a seven-year mandatory minimum sentence for that violation of 18 U.S.C. § 924(c). Baylor also asserts that his sentences

3

charge, he was subject to a consecutive mandatory minimum penalty of twenty-five years for the second conviction. *Id.* § 924(c)(1)(C). A defendant who is convicted of more than one § 924(c) violation in a single judgment is properly sentenced to the enhanced mandatory consecutive twenty-five year term for his second § 924(c) conviction. *See United States v. Robles*, 709 F.3d 98, 101 (2d Cir. 2013) (citing cases for this proposition).

In *Alleyne*, the Supreme Court held "that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155. As explained below, Baylor is entitled to no relief under *Alleyne*. The Supreme Court has held that the Government need not allege prior convictions in an indictment and need not prove them beyond a reasonable doubt for a court to use those convictions for purposes of enhancing a sentence. *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998). "Finding that a defendant's convictions were 'second or subsequent' [under 18 U.S.C. § 924(c)] is the same as finding that a defendant had a prior conviction, and the issue remains governed by *Almendarez-Torres*." *United States v. King*, 751 F.3d 1268, 1280 (11th Cir.) (citing *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013)), *cert. denied*, 135 S. Ct. 389 (2014); *see Eberhart v. United States*, Nos. 1:13CV851, 1:04CR392–1, 2015 WL 6690967, at *4 n.2 (M.D.N.C. Nov. 2, 2015) (citations omitted) (noting that "*Alleyne* does not require that a predicate conviction triggering enhanced penalties [such as one under § 924(c)(1)(C)] be alleged in the indictment or proved to the jury"); *Winkelman v. Oddo*, No. 1:14CV147, 2015 WL 6692253, at *4 (N.D. W. Va. Nov. 3, 2015) (concluding same). Therefore, no *Alleyne* violation occurred, as the Court properly determined that Baylor had

---

for the § 924(c) convictions should run concurrently with each other. (*Id.*) However, Baylor is mistaken, as "no term of imprisonment imposed on a person under [§ 924(c)(1)] shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed." 18 U.S.C. § 924(c)(1)(D)(ii); *see United States v. Brown*, 58 F. Supp. 3d 115, 117 (D.D.C. 2014).

4

committed a second or subsequent conviction under 18 U.S.C. § 924(c). Claim One will be DISMISSED.

### III. JURISDICTION

In Claim Two, Baylor contends that the Court "lacked jurisdiction over Wilson's Auto robbery as effect on interstate commerce was not properly established." (Mem. Supp. § 2255 Mot. 5.) According to Baylor, during the robbery of Wilson's Auto, he only took "personal money" from Tommy Wilson, Sr. and Tommy Wilson, Jr. (*Id.*) Plaintiff asserts that "this does not constitute interference with interstate commerce," and that "[t]he fact [that] Tommy Wilson, Sr. made the decision to replace Tommy Wilson, Jr.'s losses from the Wilson Auto account, has no direct bearing on the loss caused by the robbery." (*Id.* at 6.)

The Hobbs Act prohibits robbery or extortion that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce . . . ." 18 U.S.C. § 1951(a). "A Hobbs Act violation requires proof of two elements: (1) the underlying robbery or extortion crime, and (2) an effect on interstate commerce." *United States v. Williams*, 342 F.3d 350, 353 (4th Cir. 2003) (citing *Stirone v. United States*, 361 U.S. 212, 218 (1960)). The Hobbs Act applies whenever the offense has at least a "minimal" effect on interstate commerce. *United States v. Spagnolo*, 546 F.2d 1117, 1119 (4th Cir. 1976); *see also United States v. Taylor*, 754 F.3d 217, 222 (4th Cir. 2014) (citation omitted) (noting that "[t]he effect may be so minor as to be *de minimus*"), *cert. granted*, 136 S. Ct. 26 (2015). Moreover, "[i]t is of no moment whether the defendants intended or contemplated an effect on commerce . . . ." *Spagnolo*, 546 F.2d at 1119. "To determine whether a robbery affects commerce, [the Court] do[es] not simply examine the effect of the individual action in question; it is sufficient that the

'relevant class of acts' has a measurable impact on interstate commerce." *Taylor*, 754 F.3d at 222 (citation omitted).

During the trial, Tommy Wilson, Jr. testified that on December 21, 2010, he had cashed a $500.00 Christmas bonus check given to him by his father, Tommy Wilson, Sr., prior to coming to work at Wilson's Auto. (Feb. 1, 2012 Tr. 280, ECF No. 120.) During the robbery, Wilson, Jr. took that money out of his pocket and placed it on the floor of the garage. (Feb. 1, 2012 Tr. 284.) Furthermore, Tommy Wilson, Sr. testified that one of the robbers took money directly from his pocket. (Feb. 1, 2012 Tr. 326–27.) Wilson, Jr. further testified that his father repaid him the Christmas bonus. (Feb. 2, 2012 Tr. 355, ECF No. 121.) Moreover, during the robbery, a passenger side-view mirror on one of the vehicles in the shop was damaged. (Feb. 2, 2012 Tr. 355.) Wilson, Jr. had to replace the mirror cover for a cost of $10.00 or $12.00 before he could sell the vehicle. (Feb. 2, 2012 Tr. 355–56.)

Baylor argues that the total amount in damage would have constituted "a misdemeanor in most property crimes." (Mem. Supp. § 2255 Mot. 6.) However, whether or not the property damage would be classified as a misdemeanor is irrelevant to the determination of whether the act affected interstate commerce, as the key question is whether the offense had at least a "minimal" effect on interstate commerce. *Spagnolo*, 546 F.2d at 1119. Here, the testimony provided by the Wilsons sufficiently established that Baylor's crime had at least a "minimal" effect on interstate commerce. Therefore, the Court did not lack jurisdiction over the Wilson Auto robbery. Claim Two will be DISMISSED.

## IV. DUE PROCESS VIOLATION

In Claim Three, Baylor asserts that his right to due process was violated by "outrageous government conduct by manufacturing evidence." (Mem. Supp. § 2255 Mot. 6.) Baylor states that "2 days prior to trial, the Government dropped *all* the charges related to two of the robberies, which [were] the *Rite Aid Robbery* and the *Sammy's Auto Robbery*." (*Id.*) According to Baylor, "[t]he evidence proffered in discovery pertaining to these two robberies w[as] actually stronger than the evidence used in the two robberies [he] was convicted of." (*Id.*) Baylor claims that the Government dropped these charges because "there was exculpatory evidence, and rather than present it to [him], the government chose to drop the charge in spite of the damaging evidence that was proffered during discovery." (*Id.* at 7.) Baylor contends that "[d]ropping those charges allows the government to withhold the evidence to their benefit, and [his] demise." (*Id.* at 8.)[4]

As noted *supra* in Part I, on January 30, 2012, the Government filed a motion to dismiss without prejudice Counts Five through Ten of the Indictment. (ECF No. 79.) Those counts involved the robberies at the Rite Aid Pharmacy and Sammy's Auto Repair. (Indictment 3–6.) By Order entered on February 1, 2012, the Court granted the Government's motion to dismiss those charges. (ECF No. 81.) If Baylor had been convicted of those charges following a trial, he almost certainly would have been sentenced to a longer term of imprisonment than the term he is currently serving. For example, if Baylor had been convicted of the two additional § 924(c) charges (Counts Six and Nine), he would have received at least fifty additional years, to run

---

[4] Baylor mentions that the victim of the Sammy's Auto robbery told the police that one of the two suspects had been carrying a black semi-automatic handgun. (Mem. Supp. § 2255 Mot. 7.) According to Baylor, a firearm was located inside the black Blazer that police located outside of Baylor's mother's home. (*Id.*) In his Reply, Baylor contends that the "recovery of the handgun from a vehicle parked at his parents' home is fabricated" because "this gun was never placed in the chain of evidence." (Reply 4.) Baylor fails to explain, and this Court fails to discern, how the Government's decision to not introduce this firearm as evidence prejudiced Baylor in any way.

7

consecutive to all counts. *See* 18 U.S.C. §§ 924(c)(1)(C)(i); 924(c)(1)(D)(ii). Baylor fails to demonstrate any prejudice or a violation of his due process rights by the Government's decision to dismiss Counts Five through Ten. To the contrary, the dismissal of the counts certainly benefited Baylor. Accordingly, Claim Three will be DISMISSED.

## V. CUMULATIVE ERROR

In Claim Four, Baylor asserts a "violation of [his] right to a fair trial under the cumulative error doctrine." (Mem. Supp. § 2255 Mot. 9.) Specifically, Baylor asserts that cumulative error occurred from: (1) inconsistencies between witness eyewitness testimony and video surveillance; (2) the testimony provided by the Government's forensic analyst; and, (3) the Court's refusal to use defense counsel's proposed jury instruction regarding eyewitness identification. (*Id.* at 9–10.)

> Pursuant to the cumulative error doctrine, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)[,] *cited with approval in United States v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002). Generally, however, if a court "determine[s] . . . that none of [a defendant's] claims warrant reversal individually," it will "decline to employ the unusual remedy of reversing for cumulative error." [*United States v.*] *Fields*, 483 F.3d [313,] 362 [(5th Cir. 2007)]. To satisfy this requirement, such errors must "so fatally infect the trial that they violated the trial's fundamental fairness." *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004). When "none of [the] individual rulings work[] any cognizable harm, . . . [i]t necessarily follows that the cumulative error doctrine finds no foothold." [*United States v.*] *Sampson*, 486 F.3d [13,] 51 [(4th Cir. 2007)].

*United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (omissions and first, third, fourth, eighth, ninth, and tenth alterations in original).

Baylor raised his claims concerning the testimony of the Government's forensic analyst and the Court's rejection of the proposed jury instruction regarding eyewitness identification in

8

his direct appeal. The Fourth Circuit rejected these claims as meritless. *United States v. Baylor*, 537 F. App'x 149, 161–62 (4th Cir. 2013). Neither of these rulings caused cognizable harm to Baylor. *Basham*, 561 F.3d at 330 (quoting *Sampson*, 486 F.3d at 51).[5]

Baylor also claims that error concerning eyewitness identification existed. According to Baylor, the identifications made by several witnesses were inconsistent with video surveillance. (Mem. Supp. § 2255 Mot. 9–10.) Baylor also contends that "five different people gave conflicting identification information about each of the Baylors, yet they all positively identified both brothers during trial." (*Id.* at 11.) However, as the Fourth Circuit explained, "[t]he record here shows that the jury was made keenly aware that identification was a key issue and that they would need to determine whether the prosecution's witnesses were credible regarding their identification testimony." *Baylor*, 537 F. App'x at 160. By finding Baylor guilty, the jury determined that the witnesses' identification testimony was credible.

None of the alleged "errors" raised by Baylor "worked any cognizable harm to [Baylor's] rights." *Sampson*, 486 F.3d at 51. Accordingly, "the cumulative error doctrine finds no foothold" here. *Id.* Claim Four will therefore be DISMISSED.

## VI. EQUAL PROTECTION VIOLATION

In Claim Five, Baylor contends that his right to equal protection was violated because the "prosecutor was aware of the disproportion of stacking § 924(c) on African Americans." (Mem. Supp. § 2255 Mot. 11.) According to Baylor, "African Americans like [him] have long been disproportionately subjected to the 'stacking' of 924(c) counts." (*Id.*) Baylor asserts that the Government's decision to charge him with multiple violations of 18 U.S.C. § 924(c) "cost [him]

---

[5] Moreover, to the extent Baylor attempts to relitigate these claims, he fails to direct the Court to an intervening change in the law that would warrant their reconsideration. *See United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) (citing cases); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

an additional 32 years in prison." (*Id.*) Baylor believes that "[t]he prosecutor in this case had no interest in curving that trend of racial disparity, but chose to contribute to it by charging [him] with two (2) mandatory minimum charges for each *Hobbs Act* violation." (*Id.* at 12.) Baylor also mentions, in passing, that his sentence "r[uns] afoul [of] the Eighth Amendment."[6] (*Id.*)

The Fourth Circuit has already considered and rejected the exact arguments Baylor now raises:

> Defendants' Eighth Amendment argument is simply unavailing. "Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Harmelin v. Michigan*, 501 U.S. 957, 994, 111 s. Ct. 2680, 115 L. Ed. 2d 836 (1991). "The Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment." *United States v. Beverly*, 369 F.3d 516, 537 (6th Cir. 2004). Even a mandatory *life* sentence passes constitutional muster. *United States v. Kratsas*, 45 F.3d 63, 69 (4th Cir. 1995). Accordingly, we hold that the mandatory sentences imposed on defendants in this case, while lengthy, do not constitute cruel and unusual punishment pursuant to the Eighth Amendment.
>
> Defendants' arguments under the Equal Protection and Due Process Clauses are equally unavailing. Defendants acknowledge that § 924(c) violates the Equal Protection and Due Process clauses only if they can demonstrate that the statute lacks a rational basis. . . . The statute easily meets this standard. Discouraging and preventing the use of firearms in the commission of crimes of violence constitutes a legitimate state purpose. *See United States v. Angelos*, 433 F.3d 738, 754 (10th Cir. 2006). In addition, mandatory sentencing rationally relates to this legitimate purpose by incapacitating those who have demonstrated a willingness to engage in this behavior and deterring those who may contemplate engaging in this behavior. *Id.* Therefore, we hold that the mandatory § 924(c) sentences imposed in this case violate neither equal protection nor due process.

*United States v. Khan*, 461 F.3d 477, 494–95 (4th Cir. 2006). Baylor's § 924(c) convictions violate nether equal protection nor the Eighth Amendment. Claim Five will be DISMISSED.

---

[6] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

In Claim Six, Baylor contends that counsel was ineffective for "fail[ing] to object, or appeal all of the above issues, even after being specifically requested to do so by [him]." (Mem. Supp. § 2255 Mot. 13.)

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

Moreover, "in order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland*, 466 U.S. at 688, 694). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of

11

incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Baylor claims counsel was ineffective for failing to raise the arguments asserted in Claims One through Five both to this Court during his criminal proceedings and on appeal to the Fourth Circuit. (Mem. Supp. § 2255 Mot. 13.) However, the Court has already found that those claims are meritless. "Failure to raise a meritless argument can never amount to ineffective assistance." *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996). Moreover, Baylor has not demonstrated that these issues were stronger than those counsel chose to present on direct appeal. *Bell*, 236 F.3d at 164 (quoting *Smith*, 528 U.S. at 288). Baylor has demonstrated neither deficient performance nor prejudice, and Claim Six will be DISMISSED.

## VIII. ACTUAL INNOCENCE

In Claim Seven, Baylor "asserts he is actually innocent of all offenses for which he was convicted in this case." (Mem. Supp. § 2255 Mot. 14.) Baylor states that he "is in the process of working with various 'Innocence Projects' in an effort to have certain evidence presented in this case, either tested or re-tested." (*Id.*) Baylor "is certain that such claims if proven will exonerate him of all counts." (*Id.*) He asserts that "this claim will be fully presented at a later date." (*Id.*)

"Claims of actual innocence, whether presented as freestanding ones or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155

F.3d 396, 404 (4th Cir. 1998) (citations omitted). Moreover, "actual innocence" means factual innocence and not just legal insufficiency. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted) (internal quotation marks omitted) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence."). "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Baylor "would at the very least be required to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, 'no rational trier of fact could [find] proof of guilt beyond a reasonable doubt." *Herrera v. Collins*, 506 U.S. 390, 429 (1993) (White, J., concurring) (alteration in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)); *see also Hazel v. United States*, 303 F. Supp. 2d 753, 761 (E.D. Va. 2004) (acknowledging the suggestion that the standard set forth in *Jackson* would apply to freestanding claims of actual innocence). Here, Baylor has wholly failed to present any evidence in support of his claim of actual innocence. *See Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997) (noting that actual innocence requires presentation of new evidence and that "bare, conclusory assertion[s]" of innocence are not sufficient). Therefore, Claim Seven will be DISMISSED.

## IX. CONCLUSION

For the foregoing reasons, Baylor's § 2255 Motion (ECF No. 130) will be DENIED, and the action will be DISMISSED.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.

13

§ 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Baylor has not satisfied this standard. Accordingly, the Court will DENY a COA.

An appropriate Order will accompany this Memorandum Opinion.

Date: 2-16-16
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge