IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

    v.                                  Criminal Case No. 3:11cr64-2

TROY DOUGLAS BAYLOR,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on two motions: (1) Defendant Troy Douglas Baylor's Motion for Compassionate or Sentence Reduction, Pursuant to U.S.C. § 352(c)(1)(A)(i) And U.S.S.G. 1B1.13 Cmt. N.1(D), Pursuant to the First Step Act of 2018 Memorandum in Support, (ECF No. 237) (the "*pro se* Motion"); and, (2) Mr. Baylor's Motion to Reduce Sentence Pursuant to Section 603(b) of the First Step Act, (ECF No. 267) (the "counseled Motion") (collectively, the "Motions"). The United States responded in opposition and Mr. Baylor replied. (ECF Nos. 268, 270.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant in part the Motion for Compassionate Release. (ECF Nos. 237, 267.)

# I.  Background

## A.    Troy Baylor's Underlying Offense

On March 1, 2011, Troy Baylor, along with his brother James Baylor,[1] was charged in a thirteen-count indictment.[2]  The Indictment spoke to two armed robberies:  one on November 30, 2010, and a second on December 21, 2010.  On February 1, 2012, the Court granted the United States' Motion to Dismiss Counts Five through Ten of the Indictment.  (ECF No. 79.)  Two days later, on February 3, 2012, a jury convicted James Baylor on the seven remaining counts:

> Count 1:    Conspiracy to Interfere with Commerce by Threats and Violence between November 30, 2010 and December 21, 2010;
>
> Count 2:    Interference with Commerce by Threats and Violence on November 30, 2010;
>
> Count 3:    Use and Carry a Firearm in Furtherance of a Crime of Violence on November 30, 2010;
>
> Count 4:    Possession of a Firearm by Felon on November 30, 2010;
>
> Count 11:   Interference with Commerce by Threats and Violence on December 21, 2010;
>
> Count 12:   Use and Carry Firearm in Furtherance of a Crime of Violence on December 21, 2010; and,
>
> Count 13:   Possession of Firearm by Felon on December 21, 2010.  (ECF No. 87, at 1–3.)

---

[1] For clarity, the Court generally will refer to Troy Baylor and James Baylor by their first and last names.  Whenever this opinion speaks to "Mr. Baylor," however, it refers to Troy Baylor.

[2] One count of conspiracy to interfere with commerce by threats and violence, in violation of Title 18, United States Code, § 1951(a) (Count One); four counts of interference with commerce by threats and violence, commonly known as Hobbs Act Robbery, in violation of Title 18, United States Code, § 1951(a) (Counts Two, Five, Eight, and Eleven); four counts of use and carry a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, § 924(c) (Counts Three, Six, Nine, and Twelve); and four counts of possession of a firearm by a convicted felon, in violation of Title 18, United States Code, § 922(g)(1) (Counts Four, Seven, Ten, and Thirteen).  (ECF No. 1, at 1.)

2

Troy Baylor was forty-six years old at the time he committed these offenses.  (ECF No. 97, at 4.)

Prior to his April 24, 2012 sentencing, the probation officer prepared the Presentence Report ("PSR"), summarizing the conduct of Troy Baylor's underlying offenses.  (ECF No. 97.) Troy Baylor's convictions stem from two armed robberies he committed with, James Baylor, in late 2010.  (ECF No. 97, at 9–11.)  On November 30, 2010, Troy Baylor and James Baylor approached an employee outside of a Family Dollar store.  (ECF No. 97, at 9.)  James Baylor displayed a handgun and demanded that the employee take them inside to empty the store's safe. (ECF No. 97, at 9.)  As the employee struggled to open the safe, James Baylor threatened her. (ECF No. 97, at 10.)  Shortly thereafter, James Baylor pointed his handgun at a second employee trying to stop the robbery and instructed her to "back-off."  (ECF No. 97, at 10.)  Troy and James Baylor took $501.00 from the safe and fled.  (ECF No. 97, at 10.)

Just weeks later, on December 21, 2010, Troy and James Baylor committed another robbery, this time at Tommy Wilson's Vans & Autos.  (ECF No. 97, at 10.)  As two employees worked on a vehicle in the shop, both brothers walked in.  (ECF No. 97, at 10.)  James Baylor pointed his handgun at both victims.  (ECF No. 97, at 10.)  Troy Baylor took $610.00 from the first victim, and James Baylor took $600.00 from the second.  (ECF No. 97, at 10.)  The second victim began arguing with James Baylor that escalated into James Baylor striking the second victim in the face and head with his handgun.  (ECF No. 97, at 10–11.)  Troy Baylor then took the handgun and pointed it at the second victim, prompting the first victim to try to gain control over the handgun.  (ECF No. 97, at 11.)  During this confrontation, the handgun was dropped, and the Baylor brothers fled.  (ECF No. 97, at 11.)

**B.    Troy Baylor's Offense Level and Criminal History Computation**

The PSR also summarizes Troy Baylor's offense level and criminal history. (ECF No.

97, at 65–81.) The probation officer calculated Troy Baylor's Offense Level Total as 27. (ECF

No. 97, at 78.) His prior offenses,[3] combined with his commission of the instant offense while

on supervised probation in Virginia,[4] resulted in 21 Total Criminal History Points and a Criminal

History Category of VI. (ECF No. 97, at 77.) However, Troy Baylor also received a Career

Offender enhancement pursuant to U.S.S.G. §§ 4B1.1(c)(2)(A) and 4B1.4 (2009) and the Armed

Career Criminal enhancement under 18 U.S.C. § 924(e). (ECF No. 97 ¶ 99.) Due to these

enhancements, the recommended sentencing range for Troy Baylor was 594–646 months. (ECF

No. 97, at 78.)

On April 24, 2012, the Court sentenced Troy Baylor in the middle of the Sentencing

Guideline Range and imposed a term comprised of: (1) 240 months to be served concurrently on

Counts One, Two, and Eleven; (2) 180 months to be served concurrently on Counts Four and

Thirteen; (3) 84 months to be served consecutively on Count Three; and, (4) 300 months to be

---

[3] Troy Baylor's criminal history contains over thirty-three offenses starting from the age of sixteen and continuing through at least the age of forty-six. (ECF No. 97, at 13–42.) This history includes twenty-six theft-related offenses, of which at least seven involved physical threats or drawn weapons, despite the fact that the amount of money obtained often fell below $1,000. (ECF No. 97, at 13–42, 72–76.)

[4] The 2023 Amendments to the Untied States Sentencing Guidelines, Part A of Amendment 821 (status points under § 4A1.1) and Part B of Amendment 821 (Zero-Point offenders) changed guidelines for having committed an offense while under a criminal justice sentence and did so, importantly, retroactively. What is now U.S.S.G. § 4A.1.1(e) — relative to the former § 4.A1.1(d) — can reduce the number of points applicable to an offender's criminal history when the offense was committed under a criminal justice sentence.

Nothing in Amendment 821 would alter what would be the calculated Criminal History Category of VI in Troy Baylor's case. His final recommended guidelines are unaffected by Amendment 821.

served consecutively on Count Twelve.  (ECF No. 107, at 3.)  Troy Baylor's total term of

imprisonment is for a term of 624 months.  (ECF No. 107, at 3.)

Troy Baylor is currently housed at USP Canaan in Waymart, Pennsylvania.  *See Fed.*

*Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited August 5,

2024); *USP Canaan*, BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/caa/ (last

visited August 5, 2024).  The Bureau of Prisons ("BOP") lists Mr. Baylor's projected release

date as September 10, 2055.  *Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/

inmateloc/ (last visited August 5, 2024).  Troy Baylor has served 13 years, 7 months, and 2 days,

or twenty-six percent of his sentence, as of August 5, 2024.  (*See* ECF No. 269, at 1.)

## C.   Troy Baylor's Motion for Compassionate Release

On November 26, 2021, Troy Baylor filed a *pro se* Motion for Compassionate Release.

(ECF No. 237.)  In the *pro se* Motion, Troy Baylor discusses the sentencing disparity resulting

from his stacked § 924(c)[5] convictions and his severe health issues, to include prostate cancer,

liver hemangioma, and permanent nerve damage, as well as the impact that COVID-19 has had

on these conditions.  (ECF No. 237, at 5–10.)  On November 30, 2022, Troy Baylor, acting

through counsel, filed the instant Motion for Compassionate Release, supplementing his *pro se*

Motion.  (ECF No. 267.)  In the counseled Motion, Troy Baylor discusses his rehabilitation

---

[5] Pursuant to the Sentence Guidelines in effect at the time Troy Baylor committed his offenses, a second or subsequent count of conviction under § 924(c) triggered a higher mandatory minimum penalty, as well as mandatory "stacking" of these sentences for each count of conviction.  This was so because, in *Deal v. United States*, 508 U.S. 129 (1993), the United States Supreme Court held that even when multiple counts under § 924(c) existed in the same indictment, the conviction on the first count did not have to be final before triggering the mandatory increases and stacking provisions.  Thus, at the time of his sentencing a defendant such as Troy Baylor who faced two or more counts for possessing and brandishing a firearm, in violation of § 924(c)(1)(A)(ii), in a single charging instrument would receive a mandatory minimum sentence of seven years on the first count, and twenty-five years on each additional count.

while in prison, the advanced age he will be when released from prison, and expands upon Troy

Baylor's *pro se* discussion of the sentencing disparity resulting from his stacked § 924(c)

convictions. (ECF No. 267, at 7–10.) In support of his claims of rehabilitation, Troy Baylor

references his completion of several programs aimed towards recovery and rehabilitation, as well

as his participation in educational programs such as legal research. (ECF No. 267, at 7–8.) Troy

Baylor also contends that, if sentenced today, Count Twelve would result in an 84-month, rather

than a 300-month, sentence, due to Congress ending the practice of stacking multiple 18 U.S.C.

§ 924(c) convictions in the same prosecution. (ECF No. 267, at 2.) Troy Baylor requests a

reduction of his sentence to 408 months' imprisonment.[6] (ECF No. 267, at 2.)

　　　　The United States responded in opposition. (ECF No. 268.) The United States asserts

that Troy Baylor's stacked 18 U.S.C. § 924(c) sentences do not constitute an extraordinary and

compelling reason for relief. (ECF No. 268, at 9–11.) The United States also contends that the

---

　　　　[6] In the *pro se* Motion, Troy Baylor seeks to reduce his sentence to 360 months' imprisonment. It appears that the difference between the requested 360 months' imprisonment and 408 months' imprisonment in the counseled Motion comes from Troy Baylor's misunderstanding of the specific provision of § 924(c). Troy Baylor incorrectly states in the *pro se* Motion that "[a]t the time of [Troy] Baylor's sentence 18 U.S.C. 924(c) required 60 months for his first 924(c)" conviction. (ECF No. 237, at 5.) Troy Baylor was sentenced for "brandishing" a firearm in relation to a crime of violence. (*See* ECF No. 107, at 1, 3.) Therefore, under § 924(c), the mandatory minimum sentence for a first offense, both in 2012 and today, is seven years, or 84 months' imprisonment.

　　　　Troy Baylor's request for a reduction to 360 months' imprisonment apparently is based on a mandatory minimum of 60 months for each conviction under § 924(c), arguing that he was not convicted for "brandishing" a weapon. (ECF No. 237, at 8–9). But his assertions are incorrect. Troy Baylor "brandished" a firearm in each conviction, the mandatory minimum sentence today is 84 months' imprisonment for each charge, to be served consecutively. This results in a difference of 48 months between his request in the *pro se* Motion and the counseled Motion.

sentencing factors set forth in 18 U.S.C. § 3553(a)[7] weigh against relief. (ECF No. 268, at 11–16.)

---

[7] Section 3553(a) of Title 18 of the United States Code states:

The Court in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## II. Compassionate Release Under the First Step Act of 2018

### A. Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[8] First Step Act of 2018, Pub. L. No. 115–391, 115th Cong. (2018). Under the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences. *Coleman*, 465 F. Supp. 3d at 546.

---

[8] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. *See* 28 U.S.C. § 994(t).[9]

### B. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *Casey v. United States*, No. 4:18-CR-4 (RAJ), 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

---

[9] 28 U.S.C. § 994(t) states:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

In his counseled Motion for Compassionate Release, Mr. Baylor submits, and the United States does not dispute, that he has properly exhausted his request for compassionate release pursuant to U.S.C. § 3582(c)(1)(A).  (*See* ECF No. 267, at 6.)  This Court so finds.

### C.     Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]"  18 U.S.C. § 3582(c)(1)(A)(i).  Congress did not define "extraordinary and compelling reasons" in the statute.  The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons."  U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023).  The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider.  For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release.  A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4, n.7 (cleaned up) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release.  U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;

(C) family circumstances; and,

(D) other reasons.

U.S.S.G. § 1B1.13 cmt., n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines

amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments").

Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive

categories of extraordinary and compelling reasons that may allow for a sentence reduction.[10]

These are:

(1) certain medical circumstances of the defendant, such as terminal illness or the
inability to receive specialized medical care while incarcerated, [U.S.S.G.]
§ 1B1.13(b)(1)[11];

(2) the defendant's age . . . is at least 65 years old, *id.* § 1B1.13(b)(2)[12];

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[13];

(4) the fact that the defendant, while in custody, was the victim of sexual or
physical abuse committed by, or at the direction of, a correctional officer, *id.*
§ 1B1.13(b)(4) [14];

(5) 'any other circumstances or combination of circumstances . . . similar in
gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.*
§ 1B1.13(b)(5) [15], and,

---

[10] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

[11] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1);** *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt.
n.1(A).**

[12] *See* App. A, at **U.S.S.G. § 1B1.13(b)(2);** *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

[13] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3);** *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

[14] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4).**

[15] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5);** *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt.
n.1(D).**

(6) the defendant received an 'unusually long sentence,' *id.*
§ 1B1.13(b)(6).[16.]

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit has further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act. *See Burrell*, 2023 WL 7726404, at *4 n.7 ("[t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023."). The *McCoy* court has noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

---

[16] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6).**

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022).  District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[17] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *see also United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)").

A plethora of unpublished cases follow this same reasoning. *See, e.g., United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between

---

[17] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist.  However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction."  U.S.S.G. § 1B1.13(c) (2023).

the low end of defendant's career offender sentencing range and the low end of the non-career

offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an

extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE),

2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer

than the high end of the guidelines that would have applied under *Norman*"[18] warranted a

reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*,

2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years

was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence

reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5

(E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes

an extraordinary and compelling reason for relief"). When considering the 2018 congressional

modifications to stacked penalties for § 924(c) convictions that are relevant here, the Fourth

Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and

compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as

dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444

F. Supp. 3d at 723).

### 1.  **Medical Circumstances of the Defendant**

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court

should consider when considering medical circumstances as a basis for compelling and

extraordinary reason to grant compassionate release. The relevant section of U.S.S.G.

§ 1B1.13(b) reads:

---

[18] *United States v. Norman*, 935 F.3d. 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" given that the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
       \*     \*     \*

    (B) The defendant is—

        (i) suffering from a serious physical or medical condition,

        (ii) suffering from a serious functional or cognitive impairment, or

        (iii) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

    (D) The defendant presents the following circumstances—

        (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

        (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

        (iii) such risk cannot be mitigated in a timely or adequate manner.

U.S.S.G. § 1B1.13(b)(1)(B)–(D).

    Regarding the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." *United*

*States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases). However, "the mere existence of COVID-19 in society . . . cannot independently justify compassionate release." *Id.* (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (internal quotation marks omitted)).

### 2.   Age of the Defendant[19]

In addition to medical circumstances, the 2023 Sentencing Guideline Amendments provide that extraordinary and compelling reasons could justify a reduced sentence if "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2).

### 3.   Unusually Long Sentence

Finally, the 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering unusually long sentences as a basis for an extraordinary and compelling reason to grant compassionate release. The relevant section of U.S.S.G. § 1B1.13(b) reads:

> (6)    UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being

---

[19] In his Motion, Troy Baylor does not directly assert age as a basis for seeking compassionate release. However, this Court has discretion to consider *any* potential extraordinary and compelling reason. *See McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230). Because Troy Baylor raises a claim of age in substance if not in name when he asserts that his "624 months['] imprisonment is basically a life sentence giv[en] his age. (ECF No. 237, at 6), the Court will assess this potential basis for compassionate release.

served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

### D.   Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412. The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect from the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III.  Analysis

After due consideration, the Court will grant in part the Motions for Compassionate Release. (ECF Nos. 237, 267.) Mr. Baylor submits, and the United States does not dispute, that he has exhausted his administrative remedies. (ECF No. 267, at 6.) The Court will grant in part the Motion for Compassionate Release upon finding that the sentencing disparity resulting from Mr. Baylor's stacked § 924(c) convictions offers an "extraordinary and compelling reason" to support his request for relief. 18 U.S.C. § 3582(c)(1)(A)(i). The Court also finds that the sentencing factors set forth in 18 U.S.C. § 3553(a) support a partial reduction in sentence.

**A.      The Disparity Between Mr. Baylor's Current Sentence and the Sentence He Would Receive Today Constitutes an Extraordinary and Compelling Reason for Relief**

The Court finds that Troy Baylor offers "extraordinary and compelling reasons" to support his request for a reduction in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

Considering the specific circumstances of Mr. Baylor's offense, his 624-month sentence is "disproportionate to both 'the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct.'" *McCoy*, 981 F.3d at 279 (quoting *United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020)). The underlying robberies are serious offenses, and Troy Baylor did real and meaningful harm to the individuals he and his brother threatened with a gun during the course of his robberies. But that same extremely serious conduct in Counts Three and Twelve would subject a defendant sentenced today to a mandatory minimum sentence of 14 years' imprisonment, not the 32-year minimum applicable during Mr. Baylor's sentencing in 2012.[20] The resulting disparity between the two sentences is 216 months, or 18 years. The 18-year differential between the minimum low-end guideline sentences in 2012 and 2024 patently constitutes a "gross disparity" between them.[21] *See* U.S.S.G. § 1B1.13(b)(6).

---

[20] The table below summarizes the differences in the statutory penalties applicable to Mr. Baylor before and after the First Step Act of 2018:

|  | **Original Penalty for two § 924(c)(1)(A)(ii) offenses in the same charging document** | **First Step Act (modifying mandatory penalties for stacked § 924(c)(1)(A)(ii) offenses)** |
|---|---|---|
| Mandatory Minimum | 7 years (84 months) + 25 years (300 months) = 384 months | 7 years (84 months) + 7 years (84 months) = 168 months |
| Sentence Imposed | 384 months on Counts 3 and 12. (ECF No. 107, at 3.) | 168 months |

[21] Troy Baylor has served at least ten years of the term of his imprisonment, further supporting the extraordinary and compelling reason for relief. *See* U.S.S.G. § 1B1.13(b)(6).

**B.     Troy Baylor's Age and Medical Circumstances Do Not Create an
        Extraordinary and Compelling Reason for Relief**

In support of his contention that his medical conditions support a reduction, Troy Baylor

asserts that he has "been suffering from and batt[]ling various medical conditions such as

prostate cancer in which he underwent a very unsuccessful robotic surgery that left him suffering

from incontinence." (ECF No. 237, at 10.)  Mr. Baylor notes that he also suffers from liver

hemangioma, has had to have surgery for a rectal prolapse, has permanent nerve damage to his

right hand, and was infected with coronavirus due to being housed with other infected inmates

instead of being isolated.  (ECF No. 237, at 10.)

The Court must concede that Mr. Baylor fails to allege that he is "suffering from a

serious medical condition" that "substantially diminishes [his] ability to provide self-care within

the environment of a correctional facility and from which he . . . is not expected to recover." *See*

U.S.S.G. § 1B1.13(B).  While Mr. Baylor most certainly is suffering from a serious medical

condition, the record does not indicate that he is "suffering from a medical condition that

requires long-term or specialized medical care that is *not* being provided and without which the

defendant is at risk of serious deterioration in health or death." *See* U.S.S.G. § 1B1.13(C)

(emphasis added).  Indeed, many of Mr. Baylor's health conditions were present during his 2012

sentencing and the court requested Mr. Baylor "be designated to a facility capable of handling

[Mr. Baylor's] medical conditions." (ECF No. 107, at 3.)  Mr. Baylor had been diagnosed with

prostate cancer in 2008 four years prior to his sentencing and his procedure to remove his

prostate gland was scheduled for 2012.  (ECF No. 97 ¶ 126.)  Mr. Baylor has indicated that he is

being provided with the long-term care necessary to treat his conditions and has not provided any

allegation that he is at risk of serious deterioration of health or death if he is to remain under

BOP medical care.

As of August 5, 2024, USP Canaan has zero active COVID-19 cases among inmates and staff. *See Inmate COVID-19 Data*, BUREAU OF PRISONS, https://www.bop.gov/ about/statistics/statistics_inmate_covid19.jsp (last visited August 5, 2024). Clearly, USP Canaan is not a "correctional facility affected or at imminent risk of being affected" by an ongoing outbreak of infectious disease. *See* U.S.S.G. § 1B1.13(b)(1)(D)(i). Thus, the Guidelines provision authorizing a sentence reduction based on the risk of serious medical complications or death due to an outbreak of infectious disease do not apply to Mr. Baylor based on COVID-19. *See* U.S.S.G. § 1B1.13(D) (requiring among other criteria that the defendant's correctional facility be affected or at imminent risk of being affected by an ongoing outbreak of infectious disease).

The Court recognizes the grave health risks prisoners have faced during this pandemic and commends nationwide efforts to promptly vaccinate prison staff and inmates. Fortunately, based on current COVID-19 trends, the United States Department of Health and Human Services allowed the federal Public Health Emergency for COVID-19 to expire on May 11, 2023.[22]

Considering the foregoing, the record at bar does not justify Mr. Baylor's immediate release from federal imprisonment due to his medical conditions. Given the context of the pandemic and the lack of any imminent risk of a COVID-19 outbreak at USP Canaan, Mr. Baylor's increased risk of severe complications were he to contract COVID-19 does not warrant a reduction in his sentence at this time. Although Mr. Baylor adds that his age provides another basis for reducing his sentence (he is 59 years old) the Guidelines provide that age may constitute an extraordinary and compelling reason only where the defendant is at least 65 years

---

[22] *See COVID-19 Public Health Emergency*, U.S. DEP'T OF HEALTH & HUMAN SERVS., https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html#: ~:text=Based%20on%20current%20COVID%2D19,day%20on%20May%2011%2C%202023 (last visited August 5, 2024).

old. *See* U.S.S.G. § 1B1.13(b)(2)(A). Therefore, Mr. Baylor's chronic medical conditions in combination with his age do not warrant a reduction in his sentence.

      **C.**    **The 3553(a) Factors Support a Reduction in Mr. Baylor's Sentence**

Even after finding that extraordinary and compelling grounds for a sentence modification under § 3582(c)(1)(A) exist, a court still must consider any applicable § 3553(a) factors. Instead, the Court will impose a 411-month,[23] or approximately a 34-and-a-quarter year sentence, which would be towards the high end of his adjusted guideline range of 378-430 months' imprisonment.

The Court finds that the nature and circumstances of the offense weigh in favor of granting him partial compassionate release. *See* 18 U.S.C. § 3553(a)(1). The approximate 19-year disparity between the 2012 sentencing range and that which would apply now -- for the exact same violent conduct -- warrants relief. Troy Baylor seeks a reduction to a 408-month sentence. The Court cannot grant his request in full.

First, this sentence is sufficient but not greater than necessary to reflect the violent robberies Troy Baylor undertook. It will adequately deter criminal conduct and protect the public. After the sentence reduction, Mr. Baylor will still have approximately twenty-one years left to serve. While he will be eighty years old upon his release, this seemingly harsh reality flows in part from the fact that Mr. Baylor was forty-six years old at the time of this offense. That is an age when the likelihood of recidivism already should have waned. Upon release, Mr. Baylor will serve a five-year supervised release term which will both protect the public and assist him with reentry. (ECF No. 107, at 4.)

---

[23] Four hundred eleven months accounts for the four hundred eight month request from Troy Baylor, but adds one month for every two of his many serious disciplinary infractions while in custody.

21

While Mr. Baylor's 411-month sentence will adequately deter criminal conduct, his criminal history[24] and his seven disciplinary infractions while in federal detention, (ECF No. 268-1), suggest that the Court's consideration of public safety and whether his sentence promotes respect for the law outweigh his request for a 408-month sentence. Since his incarceration, Troy Baylor has incurred seven disciplinary infractions:

> (1) Possessing Drugs/Alcohol on December 1, 2019;
> (2) Use of Drugs/Alcohol on November 1, 2019;
> (3) Refusing to Obey an Order on July 13, 2019;
> (4) Possessing a Dangerous Weapon on February 9, 2018;
> (5) Possessing a Dangerous Weapon on April 12, 2016;
> (6) Possessing an Unauthorized Item on June 6, 2013; and,
> (7) Possessing an Unauthorized Item on February 5, 2013.

(ECF No. 268-1, at 1–3.) While the Court appreciates that Mr. Baylor has not incurred a disciplinary infraction within almost five years of filing his motion and that he took responsibility for the most recent of these offenses, (see ECF No. 268-1, at 1–3), his prior infractions – especially those for possessing a dangerous weapon – demonstrate that Mr. Baylor still presents a threat to public safety, which the Court must balance against his request for relief.

The Court also acknowledges that Mr. Baylor cites his engagement in over 750 hours of BOP–sponsored education and vocational opportunities.[25] (ECF No. 267, at 7–8; ECF No 237-

---

[24] Troy Baylor's criminal history contains over thirty-three offenses starting from the age of sixteen and continuing through at least the age of forty-six. (ECF No. 97, at 13–42.) This history includes twenty-six theft-related offenses, of which at least seven involved physical threats or drawn weapons, despite the fact that the amount of money obtained often fell below $1,000. (ECF No. 97, at 13–42, 72–76.)

[25] These educational courses include, *inter alia*, Entrepreneurship: Be Your Own Boss, Microcomputer Applications, Life After Prison: Success on the Outside, Out for Good, Coping Skills, Inside Out Dad, Victim Impact, Criminal Thinking, Drug Education, Brain Health as You Age, OVC Victim Impact: Listen and Learn, National Parenting Program Phase 1 & 2, Powered Industrial Trucks, over eleven financial management courses, Resume Writing, and Job Ready. (ECF No. 237-3, at 9–24; ECF No. 267-1, at 1–4; ECF No. 271-1; ECF No. 278, at 2–3; ECF No. 280, at 2–3.)

3.) Through these classes, Mr. Baylor has learned to recognize "the damage that [his crimes] caused not only [to] the victims, but their families as well." (ECF No. 276-1, at 4.) Mr. Baylor has also taken personal actions to redeem himself and make amends to the community by donating 30% of his facility job assignment income to food banks during the COVID-19 pandemic. (ECF No. 276-1, at 2–5.) He has "used these many years of imprisonment to work on [him]self to transform [his] character into a new, and improved human being" and "no longer think[s] like the man who was arrested back in 2011." (ECF No. 276-1, at 2.) Mr. Baylor also states that learning to "put[] others first before [him]self has radically rehabilitated [him]." (ECF No. 276-1, at 3.) In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. Mr. Baylor displays progress in his rehabilitation, and this Court commends his efforts while noticing his transgressions. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Court acknowledges Mr. Baylor's participation in programs during his time in prison, but these measures do not warrant his requested reduction in light of his disciplinary record while incarcerated, (ECF No. 268-1), and the BOP's classification of Mr. Baylor as having a "high risk recidivism," (ECF No. 268, at 14).

Furthermore, upon his release Mr. Baylor informs the Court that he has close family members who will assist with his reintegration into society. (ECF No. 267, at 14.) His mother is

gainfully employed and will welcome him back into her home in Richmond, Virginia. (ECF No. 267, at 14.) Mr. Baylor's youngest brother also lives in Richmond with his family and will assist Mr. Baylor with his transportation needs and will provide other general support. (ECF No. 267, at 14.) Mr. Baylor also anticipates that he will be able to obtain employment at a local grocery store located near his mother's home and his aunt has offered her any assistance he requires in securing employment. (ECF No. 267, at 14; ECF No. 281-1, at 2.) Mr. Baylor's family and friends continues to express their support for him and their desire to have him back home. (*See* ECF Nos. 267-4; 281-1.)

Despite his disciplinary infractions while imprisoned, the Court finds that Mr. Baylor's rehabilitative efforts and time remaining on his sentence support its decision to grant him a limited sentence reduction.

Therefore, taking all factors into consideration, the Court concludes that a reduction in Troy Baylor's sentence, from 624 months to 411 months' imprisonment, is warranted. All other terms and conditions of Mr. Baylor's original sentence will remain the same.

### IV. Conclusion

For the reasons explained above, the Court will grant in part the Motion for Compassionate Release. (ECF Nos. 237, 267.)

An appropriate Order shall issue.

Date: 8/6/2024
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

24